OPINION OF THE COURT
Bernard J. Graham, J.
Decision
A petition has been filed by the Staten Island Branch of the National Association for the Advancement of Colored People (the NAACP) pursuant to CPLR 7801 et seq., against the State of New York Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts, as respondent (the Grievance Committee).
Petitioner seeks, inter alia, a judgment of this court that the respondent Grievance Committee had acted in an arbitrary and capricious manner, by refusing to accept a complaint filed by the petitioner to investigate and determine whether the former District Attorney for Richmond County (Daniel Donovan) violated his obligations as a prosecutor to pursue an indictment against a police officer whose actions allegedly caused the death of Eric Garner, a Staten Island resident.
It is alleged that the Richmond County District Attorney, Daniel Donovan (who resigned as District Attorney after his *235 election to the U.S. Congress in 2015), violated the Rules of Professional Conduct due to his actions in presenting a case before the Richmond County grand jury which may have been deficient or purposefully designed to result in no indictment being issued by the grand jury against Police Officer Daniel Pantaleo, who was accused of causing the death of Eric Garner on July 17, 2014. Eric Garner died while being arrested by Officer Pantaleo and other police officers and the incident was filmed on a videotape and was widely viewed throughout the United States. The Richmond County grand jury declined to indict Officer Pantaleo.
The petitioner NAACP filed a grievance/complaint with the respondent Grievance Committee against District Attorney Daniel Donovan on or about December 17, 2014.
The article 78 petition was commenced by service of a notice of petition dated August 28, 2015. The respondent Grievance Committee, by its attorneys, has filed a motion to dismiss pursuant to CPLR 3211 for “failure of jurisdiction” on or about October 22, 2015.
Argument was heard before the undersigned on January 7, 2016, in Part 36 of the Kings County Supreme Court.
The petitioner has emphasized that the nature of the article 78 petition herein is to challenge the determination of the respondent Grievance Committee which has determined that the Grievance Committee is not the “appropriate forum” and, as a result, no jurisdiction lies with the respondent to hear or investigate the complaint. There is no attempt being made by the petitioner NAACP to address the underlying merits of the complaint against District Attorney Donovan involving his actions or strategy in presenting the case to the grand jury. The sole issue is whether the Grievance Committee can determine that such a complaint is not a proper application before it.
The court, after reviewing the circumstances and the existing case law, has determined that the Grievance Committee has properly declined to accept the complaint submitted by the petitioner and that this court can not impose an order upon such a body to accept a type of case involving discretionary acts of a prosecutor.
Background
Eric Garner died on July 17, 2014 while being arrested by New York City Police Officers in Staten Island. The videotape of the arrest was disturbing and inflamed public sentiment as *236 it showed Mr. Garner unable to breath and in distress. The death was ruled a homicide by the New York City Medical Examiner.
District Attorney Donovan presented evidence and witnesses to the Richmond County grand jury which voted not to indict and no charges were brought against Police Officer Daniel Pan-taleo stemming from Mr. Garner’s death.
A complaint was submitted to the Grievance Committee on or about December 17, 2014, alleging, inter alia, that District Attorney Donovan violated his obligations under the Rules of Professional Conduct due to the fact that he chose not to recuse himself from the matter and, consequently, proceeded to handle the matter despite the existence of the purported conflict of interest. The NAACP argues that an inherent conflict of interest exists when a district attorney is charged with pursuing an indictment of a police officer, as the district attorney works closely with the police department and cannot be expected to be impartial when a police officer is involved with causing the death of a civilian and there is, according to the NAACP, at least an indication that District Attorney Donovan’s actions in presenting the case were skewed towards a no-bill decision.[1] Petitioner had made efforts to have a special prosecutor appointed to handle the proceedings which were unsuccessful. Similarly, efforts by the NAACP to have the Attorney General serve as a special prosecutor, in accordance with the executive order of Governor Andrew M. Cuomo (which was signed after Mr. Garner’s death), were unsuccessful.[2]
The Grievance Committee declined to accept the complaint from the petitioner and issued a letter dated January 23, 2015 by Diane Maxine Kearse, counsel to the Committee, stating simply that the Grievance Committee was “not the appropriate forum” for the complaint. (See Diane Maxine Kearse letter at *237 tached as exhibit C to petition.) A second letter ruling was dated March 17, 2015, also from Ms. Kearse, which explained that the complaint was not within the jurisdiction of the Grievance Committee, as the complaint was “directed at the decisions and actions of an elected public official, made pursuant to the powers and duties afforded to him, and all others in his title, under state law.” (See Kearse letter attached as exhibit E to petition.)
Upon notification that the Grievance Committee declined to consider the complaint, petitioner applied to the Presiding Justice of the Appellate Division of the Second Department, in his capacity as Chief Administrative Officer of the Department and to whom a follow-up request would necessarily be brought.
By letter dated April 27, 2013, Robert Guido, Executive Director for Attorney Matters, responded to Mr. Meyerson on behalf of the Presiding Justice of the Second Department, Randall T. Eng.
Mr. Guido provided a more responsive explanation for the decision to decline to pursue a complaint against Mr. Donovan by relying on the discretionary powers of the Grievance Committee to choose to pursue a complaint or decline to do so. Mr. Guido also took exception to the conclusion of the petitioner that Mr. Donovan is inherently conflicted due to his role as District Attorney and, finally, that it is not the Grievance Committee’s role to investigate instances in which a county district attorney “wrongfully” failed to secure an indictment. Accordingly, Mr. Guido, on behalf of the Chief Administrative Judge, found no basis to overrule the determination of the Grievance Committee (see Guido letter, dated Apr. 27, 2015, annexed to petition as exhibit N).
Discussion
It is the position of the respondent, through its attorneys, that exclusive jurisdiction to review a Grievance Committee determination resides with the Presiding Justice of the Appellate Division in his administrative capacity. Recent authority for that position is the case of Matter of Taylor v Adler (73 AD3d 937 [2d Dept 2010]). Taylor v Adler, similar to the instant case, was brought as an article 78 proceeding to review the actions of Counsel to the Grievance Committee of the Tenth Judicial District which had declined to investigate and prosecute a complaint against an attorney. In unequivocal language, the Appellate Division for the Second Department held that the article 78 petition in that case must be dismissed *238 “because only the Appellate Division of the Supreme Court and not an IAS, special, trial, or other term of the Supreme Court has jurisdiction over attorney disciplinary matters” (Taylor v Adler, 73 AD3d at 938).
It is the existing law of the State of New York that the only allowable mechanism for review of the actions of a state grievance committee is through the application to the Presiding Justice of the appropriate Appellate Division when the grievance committee has issued an unfavorable ruling (see Matter of Pettus v Dudis, 82 AD3d 896 [2d Dept 2011]; Matter of Morrow v Cahill, 278 AD2d 123 [1st Dept 2000]).
In view of the fact that this particular case appears to be one of first impression and the importance of this issue and the efforts made by petitioner’s counsel to review this matter, the court finds it appropriate to review the arguments raised by counsel. A good portion of petitioner’s 66-page petition is spent in criticizing the current criminal justice system and the (alleged) inherent conflict of interest of the District Attorney prosecuting the death of a civilian caused by a police officer. Mr. Meyerson, counsel to the NAACP, is critical of situations in which district attorneys have handled the criminal prosecution of police officers who have caused the death of unarmed persons because, at the very least, there is an appearance of a conflict of interest in that the district attorney must depend on the cooperation and assistance of the police in prosecuting general criminal matters. Without obtaining an indictment of the police officer and then being informed that the conduct of the District Attorney may not be investigated by the Grievance Committee leads Mr. Meyerson to conclude that the criminal justice system is “infected” by an actual conflict of interest and that no one is held accountable for the death of Eric Garner (petition at 53). The decision by the Grievance Committee to refuse to even consider the merits of the substance of the petitioner NAACP’s complaint leads to the conclusion by Mr. Meyerson that “the system is rigged” as “all the players come together to protect themselves and the system of which they are a part” (petition at 55).
The petitioner has made the case for public outrage as there have been several tragic deaths, involving minorities, being killed as a result of incidents involving the police. Mr. Meyer-son quotes the Reverend Martin Luther King, Jr., the theologian Reinhold Niebuhr and the author Ta-Nehisi Coates to support the contention that the minority community is often denied justice in the criminal justice system.
*239 Mr. Meyerson repeats, in the petition, his arguments made to counsel to the Appellate Division (Mr. Guido) that the appeal presents important issues with wide-ranging ramifications “which reach far beyond the particulars of this specific matter” (petition at 28). Mr. Meyerson raises the specter that a decision to not investigate the conduct of district attorneys effectively means that they would have no oversight for their actions and conduct (petition at 30).
It is here that counsel makes a salient argument in support of reviewing the District Attorney’s actions based on writings of the U.S. Supreme Court. The United States Supreme Court recognized that prosecutors have absolute immunity from civil suits in Imbler v Pachtman (424 US 409 [1976]). The Supreme Court did offer, in Imbler v Pachtman, that while the prosecutor may have immunity from prosecution, the prosecutor may still be held accountable to the legal community under the relevant codes of professional responsibility (see Imbler v Pachtman, 424 US at 430) and that language appears as dicta in the Imbler case. Mr. Meyerson makes the argument that the Supreme Court could not have envisioned scenarios, such as this, in which a district attorney’s (alleged) improper conduct, which might not be susceptible of prosecution in a civil court because of absolute immunity, would also be beyond the reach of a local oversight committee related to the conduct of attorneys, including public office holders (petition at 31).
It is this court’s opinion that there would certainly be instances in which a district attorney, representing the public in criminal prosecutions, would be properly reported to a grievance committee, perhaps due to moral turpitude or lack of fitness to practice law, yet the petition in this matter is squarely a question of whether or not the District Attorney acted improperly in failing to obtain an indictment against Officer Pantaleo. Regardless of the opinion that one might have of Mr. Donovan’s actions in presenting the Eric Garner case to the grand jury, the actions and conduct fall within the discretion of the District Attorney and the law is firmly established that the discretionary acts of a prosecutor are shielded from the oversight of civil court review (see Matter of Soares v Carter, 25 NY3d 1011 [2015]; Matter of Hassan v Magistrates' Ct. of City of N.Y., 20 MisC 2d 509 [Sup Ct, Queens County 1959]). The rule is also applicable in the federal courts (see Howell v Brown, 85 F Supp 537 [D Neb 1949]).
That deference is given to a district attorney to move forward with a criminal prosecution is beyond dispute. The decision to *240 not bring a prosecution has been held to be beyond the function of the courts to supervise and “the general duty to prosecute all crimes or the special duty to prosecute a particular crime may not be required or supervised” (Matter of Leone v Fanelli, 194 MisC 826 [Sup Ct, Westchester County 1949]; see also People v Florio, 301 NY 46 [1950]; Kerstanski v Shapiro, 84 MisC 2d 1049 [Sup Ct, Orange County 1975]).
The bedrock principle of allowing discretion to district attorneys is premised on the often repeated description of the prosecutor serving in a “quasi-judicial role” and, accordingly, the prosecutor must be afforded the protections from challenges that may be brought when the result reached in a criminal matter is thought to be incorrect or unsatisfactory to the public (see Yaselli v Goff, 12 F2d 396 [2d Cir 1926]). Prosecutors, like judges and jurors, have historically shared in immunity from prosecution to protect the independence of the prosecutor’s office (see Imbler v Pachtman, 424 US 409 [1976]). This same principle of protecting the independence of prosecutors is the same concept of preserving the independence of legislators from “the dampening effects of threatened lawsuits” (Imbler v Pachtman, 424 US 409, 435 [1976], citing Tenney v Brandhove, 341 US 367 [1951]); or protecting judges from the burden of defending damage suits brought by disappointed litigants which would “contribute not to principled and fearless decision-making but to intimidation.” (Pierson v Ray, 386 US 547, 554 [1967].)
Petitioner in this instance characterizes the article 78 petition solely as a means to determine that the Grievance Committee is the “appropriate forum” to bring the complaint against District Attorney Donovan, without delving into the merits at this time. However, the effect of allowing a complaint to a grievance committee for actions which fall within a discretionary function are basically a different avenue to challenge the independence of the prosecutor’s office that would not be available through a civil suit. This is a clever attempt to challenge the District Attorney who failed to reach an indictment when there is a suspicion that the District Attorney had not pursued the matter in good faith or professionally. However, to permit such a complaint to go forward would have a chilling effect on the independence of the prosecutor and lead to unanticipated consequences which would skew the criminal justice process in equally unfavorable directions.
Petitioner raises a valid concern about the public’s perception of the integrity of the judicial system when it appears that *241 no one is held accountable in a tragic death and there is certainly room for reforms to be made. As discussed above, Governor Cuomo has signed an Executive Order to appoint a special prosecutor in situations involving a police involved killing, to reduce the perception or appearance of conflicts of interest which are a concern raised in this proceeding. As noted by respondent’s counsel, Chief Judge of the New York Court of Appeals Jonathan Lippman (now retired) had proposed legislation which would have a judge preside over grand jury proceedings involving allegations of homicide or felony assault by police officers towards civilians. (See remarks of Chief Judge Lippman annexed as exhibit B to aff of Lee Alan Adlerstein in support of respondent’s motion to dismiss.) Chief Judge Lipp-man’s proposals were directly related to Eric Garner’s death. There is, of course, the option available to the public to utilize the political process to express its displeasure and vote against a prosecutor at the ballot box.
Conclusion
In conclusion, this matter involves weighing the independence of a prosecutor’s office as it conducts a criminal prosecution against the interests of members of the public who seek further investigation (and possibly a reprimand or sanction) related to the acts of the prosecutor in failing to obtain an indictment in a highly charged case. It is this court’s opinion that the current law dictates that this court may not overrule the decision of the Grievance Committee and that there is a sound and rational basis for not doing so.
The motion by respondent to dismiss the article 78 petition filed by petitioner is granted.

. Counsel for the petitioner, James Meyerson, Esq., claims that District Attorney Donovan convened a special grand jury in which 50 witnesses were presented over the course of three months. Witnesses included several police officers who were given transactional immunity and Mr. Meyerson argues that the presentation by DA Donovan was calibrated to ensure that no indictment would be issued (see petition at 46).

. Executive Order No. 147 was signed by Governor Andrew M. Cuomo on July 8, 2015 and, by its terms, empowers the Attorney General to investigate those matters involving the death of a civilian caused by a police officer and to prosecute such acts, if warranted. Based on correspondence submitted, the application to have Attorney General Schneiderman appointed as special prosecutor was denied as (according to the Attorney General’s office) the Executive Order could not be applied retroactively.